# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**JORGE DOMINGUEZ-TORRES,**

    **Plaintiff,**

  v.                                                                    Case No. 18-CV-1322

**BETH DITTMAN,** *et al.*

    **Defendants.**

---

## REPORT AND RECOMMENDATION

---

Plaintiff Jorge Dominguez-Torres, a Wisconsin state prisoner who is representing himself, filed this lawsuit under 42 U.S.C. § 1983. District Judge Lynn Adelman, to whom this case is assigned, screened Dominguez-Torres's complaint and allowed him to proceed on Eighth Amendment claims against Defendants Beth Dittman, Kasia Czajkowska-Virgell (formerly Czajkowska-Tomczak), Joni Dykstra, and John Doe defendants. (ECF No. 16.) The Doe defendants were later dismissed on Dominguez-Torres's motion. (ECF No. 33.) Both Dominguez-Torres and the defendants have moved for summary judgment. (ECF Nos. 34 (Dominguez-Torres) & 37 (Defendants).) The motions are fully briefed and ready for this court's review and recommendation to Judge Adelman.

## BACKGROUND

Dominguez-Torres did not submit proposed findings of fact or a declaration in support of his motion for summary judgment. However, he submitted those

documents over a month later, with his response in opposition to the defendants' motion for summary judgment and his response to the defendants' proposed findings of fact. (ECF Nos. 43–46.) Although the court has discretion to enforce its local procedural rules against pro se litigants, *Hill v. Thalacker*, 210 F. App'x 513, 515 (7th Cir. 2006), the court will consider Dominguez-Torres's proposed findings of fact to the extent they are supported by evidence in the record.

Therefore, the facts in this section are taken from the defendants' proposed findings of fact and their declarations in support (ECF Nos. 38–42) and, where Dominguez-Torres cites appropriate evidence in support of his proposed facts, *see* Fed. R. Civ. P. 56(c)(1)(A), Civil L. R. 56(b)(1)(C)(i) and (b)(2)(B)–(C), from his proposed findings of fact and response to the defendants' facts (ECF Nos. 45 & 46). Any fact Dominguez-Torres has not appropriately contested is deemed admitted for purposes of this recommendation. Fed. R. Civ. P. 56(e)(2); Civil L. R. 56(b)(4).

The events of this case occurred at Dodge Correctional Institution ("DCI"), where during all relevant dates Dominguez-Torres was an inmate, Dittman was the Nursing Supervisor in the Health Services Unit ("HSU"), and Czajkowska-Virgell and Dykstra were Registered Nurses. (ECF No. 39, ¶¶ 1–2, 4.)

An intake nurse at DCI screens new inmates in the "intake area," which is separate from the HSU. (ECF No. 39, ¶¶ 6–8.) Current inmates seeking medical treatment submit a Health Service Request and are seen by nurses at the HSU. (*Id.*, ¶¶ 9–10.) Unit staff do not bring inmates to intake for treatment and, instead, bring inmates directly to the HSU. (*Id.*, ¶ 19.) The charge nurse in the HSU sees patients

and tends to medical emergencies. (*Id.*, ¶ 12.) HSU staff triage inmate Health Service Requests and, where possible, evaluate emergent requests the same day. (*Id.*, ¶ 11.)

## A. June 28, 2013

In his complaint, Dominguez-Torres alleged that in June 2013 he was taken to a hospital for a urology appointment, during which "a student put a catheter in me twice." (ECF No. 1 at 3.) When he returned to DCI, he "was in a lot of pain," experiencing "fever's [sic] and chills," and "it burned badly when I urinated, my right buttcheek hurt badly as well when I pooped." (*Id.*) Intake officers called the HSU "and asked Nurse 'Kashia' if she could see me, but she refused." (*Id.*) Dominguez-Torres initially alleged that "Nurse 'Kashia'" refused to see him on June 29, 2013, but the parties have since clarified that the relevant date is June 28, 2013, and have proceeded with that correction.

In his proposed findings of fact, Dominguez-Torres reiterates that intake officers called the HSU on June 28, 2013, "and asked if Nurse Kashia could see the plaintiff regarding his pain. Nurse Kashia refused." (ECF No. 45, ¶ 2.) In other materials he submitted in response to the defendants' motion for summary judgment, Dominguez-Torres asserts that Czajkowska-Virgell was not working as an intake nurse after 5:30pm because that is when intake closes, and "the intake nurse returns to the HSU department for duties." (ECF No. 44 at 2; ECF No. 46, ¶ 16.) He alleges that, after 5:30pm, unit staff take inmates to the HSU "because that is where the intake unit nurse would be after intake close[s]." (ECF No. 46, ¶ 19.) He reiterates that he "had no contact" with Czajkowska-Virgell on June 28, 2013, "because she

3

refused to treat him for his medical needs, and she did receive[] call regarding his condition." (*Id.*, ¶ 15.)

But contrary to his complaint, in which he alleged that intake officers only *called* the HSU, he alleges in the very next paragraph of his summary judgment materials that a staff member *brought him to* the HSU, where Czajkowska-Virgell was working, and that he "talk[ed] to her and saw her myself." (ECF No. 46, ¶ 16.) He later reiterates that a "staff member did bring Dominguez to HSU department with a medical emergency, here Czajkowska was and she refused to assist him." (*Id.*, ¶ 20.) Dominguez-Torres does not cite any evidence in the record, including his own affidavit, for his assertions that Czajkowska-Virgell was working in the HSU after 5:30pm on June 28, 2013, and that he personally saw and spoke with her. He alleges only that he "is aware" of this information. (ECF No. 44 at 2.)

The defendants present a different version of the facts. On June 28, 2013, Czajkowska-Virgell worked as the intake nurse from 1:45pm until 9:00pm. (ECF No. 39, ¶ 16.) As intake nurse, she would not have received any calls about inmate patient care. (*Id.*) The phone, which unit staff may use to request inmate care, is located in the HSU and connects to the HSU charge nurse. (*Id.*, ¶ 17.) Czajkowska-Virgell took over as the charge nurse in the HSU at 9:00pm and worked in that position until 10:15pm but did not receive any calls. (*Id.*, ¶ 18.)

At 9:49am on July 1, 2013, Dittman received an email from a social worker about medical issues Dominguez-Torres was having. (ECF No. 39, ¶ 34.) The social worker wrote that Dominguez-Torres told her that he had returned to DCI after a

4

hospital visit on June 28, 2013, and was experiencing "cold spells, fever, and lots of pain." (ECF No. 41-1.) According to the social worker, Dominguez-Torres told her that he "did not get seen that day because 'the nurse' that he had issues with was working and refused to see him." (*Id.*) He believed he was scheduled to see a doctor on July 1, 2013, but told the social worker that he "did not see his name down." (*Id.*) Although Dittman cannot recall her response to the email, her normal response to such emails was to schedule the inmate for an HSU appointment the same day. (ECF No. 39, ¶ 35.) That appears to be what happened on July 1, 2013, because at 12:30pm that day Nurse Degner, who is not a defendant, evaluated Dominguez-Torres. (ECF No. 39, ¶ 36; ECF No. 40-1 at 3.) Degner consulted with a doctor, who ordered antibiotics for a possible urinary tract infection, and told Dominguez-Torres to report any further problems. (ECF No. 40-1 at 3–4.)

The next day, July 2, 2013, Dominguez-Torres filed an interview/information request and a demand for disciplinary action against Czajkowska-Virgell for refusing to see or treat him on June 28, 2013. (ECF No. 39, ¶ 37.) He stated in his request that on June 28, 2013, officers at intake called "Nurse 'Kasha'" to the HSU and asked if she wanted to see Dominguez-Torres, "but she denied and make me wait until[] 7:30 for my regular pain medication." (ECF No. 41-2 at 1.) Dittman received Dominguez-Torres's request. (ECF No. 39, ¶ 37.) Because Degner had treated Dominguez-Torres on July 1, 2013, and his medical concerns had been addressed, Dittman believed that no further action was needed on his interview/information request. (*Id.*, ¶¶ 38–39.)

5

**B. July 2, 2013**

Dominguez-Torres also alleges that Czajkowska-Virgell and Dykstra refused to treat his medical issues on July 2, 2013. (ECF No. 46, ¶ 5; ECF No. 39, ¶5.) That evening, unit staff brought Dominguez-Torres to the HSU in a wheelchair. (ECF No. 39, ¶ 22.) According to Dykstra, Dominguez-Torres was brought in at the usual time for his nighttime medications and asked only that Dykstra take his temperature. (*Id.*) Dykstra was the only nurse in the office at the time and was tending to diabetic patients. (*Id.*, ¶ 25; ECF No. 41-5 at 1.) Dykstra did not take Dominguez-Torres's temperature because, after reviewing his medical chart, she saw that he had been seen earlier that day as well as the day before by Nurse Degner and the doctor, who evaluated Dominguez-Torres and diagnosed the possible urinary tract infection. (ECF No. 39, ¶¶ 23–24; ECF No. 41-5 at 1.) Because Dominguez-Torres's vitals and temperature had been normal at those appointments, Dykstra concluded that Dominguez-Torres was not in need of emergency care and could wait until the next day to have his temperature taken. (ECF No. 39, ¶¶ 24, 27, 29.)

Czajkowska-Virgell was the intake nurse on July 2, 2013, and was not working in the HSU. (ECF No. 39, ¶ 30.) She says she left work early that day, at 7:15pm, because of a personal medical emergency and had no contact with Dominguez-Torres. (*Id.*, ¶ 31.) However, Dominguez-Torres swears that he saw and spoke with Czajkowska-Virgell on July 2, 2013, though he does not describe the conversation. (ECF No. 46, ¶ 31; ECF No. 44 at 2.) He insists Czajkowska-Virgell falsified the notes

she submitted corroborating her recollection of June 28 and July 2, 2013. (ECF No. 44 at 2; *see* ECF No. 42-2.)

The next day, July 3, 2013, Dittman received another email from Dominguez-Torres's social worker, who wrote that Dominguez-Torres was continuing to have difficulty receiving medical treatment, which he believed was because of the earlier complaint he had filed against Czajkowska-Virgell. (ECF No. 39, ¶ 40.) The social worker wrote that Dominguez-Torres reiterated to her that he had been denied care on June 28, 2013, and again at 7:15pm on July 2, 2013, when unnamed HSU staff "sent [him] away, and I have not been seen." (*Id.*; ECF No. 41-4 at 1.) Also on July 3, 2013, Dominguez-Torres submitted a second interview/information request in which he does not name any medical staff who refused to treat him but states that the doctor who had treated him on July 1, 2013, could not "give appoin[t]ment until[] next week." (ECF No. 39, ¶ 41; ECF No. 41-3.) He requested an earlier visit with a different doctor because "the pain it's terrible." (ECF No. 41-3.) The same day, Dittman located Dominguez-Torres in the HSU, spoke with him about his medical condition, and arranged for him to see the DCI doctor that day. (ECF No. 39, ¶¶ 42–43; ECF No. 41-4 at 1.) Dominguez-Torres saw the doctor and was later admitted to Waupun Memorial Hospital for treatment of a rectal abscess and urinary retention. (ECF No. 39, ¶ 44; ECF No. 40-1 at 8–9; ECF No. 41-5 at 2.)

Several weeks later, an Institution Complaint Examiner contacted Dittman about an inmate complaint Dominguez-Torres had filed alleging HSU staff denied him treatment on June 28 and July 2, 2013. (ECF No. 39, ¶ 46.) Dittman reviewed

7

Dominguez-Torres's medical file and provided a summary to the complaint examiner. (*Id.*, ¶ 47; *see* ECF No. 41-5.) Dittman's review corroborated Czajkowska-Virgell's account that she was working intake on June 28 and July 2, 2013, and was not working in the HSU when Dominguez-Torres was admitted there. (ECF No. 39, ¶¶ 48–49; ECF No. 41-5 at 1.) Dittman also corroborated that Dykstra did not treat Dominguez-Torres on July 2, 2013, but deferred to Dykstra's judgment that emergency care was not needed at that time. (ECF No. 39, ¶¶ 50–51; ECF No. 41-5 at 1.) Dominguez-Torres did not submit a Health Services Request to HSU for any of the issues he experienced between June 28 and July 2, 2013. (ECF No. 39, ¶ 33.)

**SUMMARY JUDGMENT STANDARD**

A party is entitled to summary judgment if it shows that there is no genuine dispute as to any material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.*

Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To survive a motion for summary judgment, a non-moving party must show that sufficient evidence exists to allow a jury to return a verdict in its favor. *Brummett v. Sinclair Broad. Grp., Inc.*, 414 F.3d 686, 692 (7th Cir. 2005).

8

## ANALYSIS

The Eighth Amendment prohibits cruel and unusual punishments. *See generally Wilson v. Seiter*, 501 U.S. 294 (1991). To state a valid Eighth Amendment claim, the inmate must allege both that he "suffered from an objectively serious medical condition" and that the defendants were "deliberately indifferent to that condition." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)); *see Estelle v. Gamble*, 429 U.S. 97, 103 (1976). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835. A prison official cannot be found liable under the Eighth Amendment unless she subjectively knows of an excessive risk of harm to an inmate's health or safety and disregards that risk. *Id.* at 837; *Perez*, 792 F.3d at 776.

Neither negligence nor medical malpractice is enough to support an Eighth Amendment claim. *See Farmer*, 511 U.S. at 835–36; *Estelle*, 429 U.S. at 106; *Brown v. Peters*, 940 F.3d 932, 937 (7th Cir. 2019). A medical professional's treatment decisions are entitled to deference "unless 'no minimally competent professional would have so responded under those circumstances.'" *Sain v. Wood*, 512 F.3d 886, 895 (7th Cir. 2008) (quoting *Collignon v. Milwaukee County*, 163 F.3d 982, 988 (7th Cir. 1998)). The medical professional's actions may demonstrate deliberate indifference if she "chooses an easier and less efficacious treatment without exercising professional judgment." *Arnett v. Webster*, 658 F.3d 742, 754 (7th Cir. 2011).

Defendants do not contest that Dominguez-Torres suffered from an objectively serious medical condition in June and July 2013. They focus instead on whether each defendant was subjectively aware of, but deliberately indifferent to, his medical need. The court will assume for purposes of this recommendation that Dominguez-Torres's medical issues satisfy the objective component of an Eighth Amendment claim.

**A. Czajkowska-Virgell**

Defendants assert that it is undisputed Czajkowska-Virgell did not receive a call about Dominguez-Torres, or see him for treatment, on June 28, 2013, when she was working as intake nurse. (ECF No. 38 at 7.) Nor, Defendants contend, is there evidence that she received any calls as the charge nurse in the HSU later that same evening. (*Id.* at 7–8.) Defendants further assert that it is undisputed that Czajkowska-Virgell was not working in the HSU on July 2, 2013, when Dominguez-Torres arrived for treatment. (*Id.* at 8.) Because Czajkowska-Virgell had no contact with Dominguez-Torres on either of these dates, Defendants conclude, there is no basis for finding her deliberately indifferent to his medical needs. (*Id.*)

Several months prior to these incidents, on March 13, 2013, Dominguez-Torres complained that "the nurse named 'Casha' refused to help me when I ask for attention because I f[ee]ling very very hard pressure on my genitals parts, and strong pain because I had multiple sergurys [sic] on my penis." (ECF No. 45-1 at 1.) Czajkowska-Virgell acknowledges in her logbook this contact with Dominguez-Torres on March 13, 2013. (ECF No. 42-2 at 4.)

Thus, a reasonable jury could conclude that, when Dominguez-Torres in discussing the incident on June 28, 2013, told the social worker that it was "'the nurse' that he had issues with" who refused to see him (ECF No. 41-1), and asked Dittman "to d[o] something against the nurse 'Kasha' because for the second time she put on risk my health" (ECF No. 41-2; ECF No. 45-1 at 3), he is referring to Czajkowska-Virgell. Although Czajkowska-Virgell swears she did not refuse to see any inmate on June 28, 2013, or any other date, a genuine issue of material fact exists as to whether it was Czajkowska-Virgell who the officers called and whether she declined to see Dominguez-Torres on June 28, 2013. As such, summary judgment is inappropriate for either party regarding the June 28, 2013, claim.

Dominguez-Torres also contests Czajkowska-Virgell's statement that she left work early on July 2, 2013, and was not in the HSU when he was brought there for treatment. (ECF No. 44 at 2; ECF No. 46, ¶ 31.) But he does not point to any evidence in the record supporting his assertion. Czajkowska-Virgell submitted her work schedule showing that she was scheduled to work on July 2, 2013, from 1:45pm until 10:15pm as the intake nurse and not in the HSU. (ECF No. 42-1 at 1; ECF No. 43-1 at 16.) Czajkowska-Virgell swears she worked that night until 7:15pm before leaving early for a medical issue. And the schedule corroborates her statement that she worked as the intake nurse on July 2, 2013, and therefore would not have been at the HSU, where Dominguez-Torres was taken for treatment.

The evidence shows that only Dykstra refused Dominguez-Torres treatment on July 2, 2013. Czajkowska-Virgell is therefore entitled to summary judgment regarding Dominguez-Torres's claim that she denied him treatment on July 2, 2013.

**B. Dykstra**

There is no dispute that Dykstra was working in the HSU on July 2, 2013, when a correctional officer brought Dominguez-Torres to the HSU in a wheelchair. Defendants assert that Dominguez-Torres was there for his nighttime medication, not for an emergency visit, and requested only that Dykstra take his temperature. (ECF No. 38 at 8.) Defendants contend that, because a nurse and doctor had evaluated Dominguez-Torres earlier in the day and the previous day, Dykstra reasonably declined to take his temperature that evening and to tend to other patients. (*Id.* at 9–10.)

Dominguez-Torres provides no admissible evidence showing that he was brought to the HSU on July 2, 2013, for an emergency or a purpose other than his routine medications. Nor did he tell the social worker, who translated to English his complaint about July 2, 2013, that he was taken to the HSU for an emergency. (ECF No. 41-4 at 1.) The interview/information request he sent to Dittman regarding July 2, 2013, likewise does not discuss emergency treatment the night before or mention Dykstra by name, and in it Dominguez-Torres requests only an earlier doctor appointment. (ECF No. 41-3.)

The evidence shows that Dykstra spoke with Dominguez-Torres, reviewed his medical chart, and noted his recent treatment that day and the day before. She

12

concluded that, in her professional medical judgment, Dominguez-Torres could wait until the following morning to have his temperature taken. There is no basis upon which a reasonable jury could conclude that Dykstra acted outside her professional judgment in declining to take Dominguez-Torres's temperature or otherwise provide him treatment on July 2, 2013.

In his response materials, Dominguez-Torres submitted a decision from the Office of the Secretary affirming Dominguez-Torres's appeal of his inmate complaint. (Doc. 43-1 at 17.) That decision concludes that Dominguez-Torres "should have been seen by medical staff on 7/2/13 in the evening when the Officer brought him to HSU in the wheel chair." (*Id.*) Dominguez-Torres insists that this decision proves Dykstra was deliberately indifferent to his medical needs on July 2, 2013. (ECF No. 43 at 8.) But the Secretary's conclusion does not mean Dykstra's actions were constitutionally deficient. It could be a basis for suggesting that Dykstra acted negligently in declining to treat Dominguez-Torres. Although it is possible negligence may suffice to affirm an inmate complaint, neither it nor medical malpractice amount to a constitutional violation. *See Farmer*, 511 U.S. at 835–36; *Estelle*, 429 U.S. at 106. No evidence has been presented showing that Dykstra was deliberately indifferent to Dominguez-Torres's medical condition on July 2, 2013, and she is entitled to summary judgment.

### C. Dittman

Defendants contend that Dittman responded appropriately to Dominguez-Torres's complaints and the emails from his social worker by reviewing his medical file and scheduling him medical treatment. (ECF No. 38 at 10–11.) They assert that

Dittman had no obligation to discipline Czajkowska-Virgell or Dykstra because, she believed, they had not acted inappropriately. (*Id.* at 11.) Defendants conclude that a reasonable jury would not find Dittman was deliberately indifferent to Dominguez-Torres's medical issues. (*Id.* at 11–12.)

Dittman did not treat Dominguez-Torres but worked as the supervisor of the HSU. Under § 1983, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Iqbal*, 556 U.S. at 676. Thus, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* To show a supervisory official's personal involvement in the unconstitutional conduct, "the supervisor must 'know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see.'" *Matthews v. City of E. St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012) (quoting *Jones v. City of Chicago*, 856 F.2d 985, 992–93 (7th Cir. 1988)).

The evidence shows that Dittman was made aware of Dominguez-Torres's concerns both through his complaints and his social worker's emails. But there is no evidence Dittman approved of or condoned any particular nurse's conduct. Dittman responded to Dominguez-Torres's complaint and the social worker's email sent on July 1, 2013, by scheduling him to see a nurse that same day, only hours later, with a follow-up the next day. She did not turn a blind eye to anyone's refusal to treat him on June 28, 2013, but instead sought to remedy the situation as quickly as possible.

Because Dykstra was not deliberately indifferent to Dominguez-Torres's medical issues on July 2, 2013, there is no unconstitutional conduct for which Dittman could be liable. Nonetheless, after Dominguez-Torres complained about his treatment on July 2, 2013, Dittman met with him right away and scheduled an immediate appointment with a doctor. That appointment led to Dominguez-Torres being taken to a hospital for emergency treatment. It is not clear what more Dittman could have or should have done in response to Dominguez-Torres's complaints and the social worker's emails. The facts do not provide a basis upon which a reasonable jury could conclude that Dittman was deliberately indifferent to Dominguez-Torres's medical issues or concerns.

Dominguez-Torres asserts in several places that the defendants falsified evidence to cover up for the nurses' actions or provided incorrect information. (*E.g.,* ECF No. 36 at 3–4; ECF No. 43 at 7, 19–21; ECF No. 44 at 2.) Although at least one of these accusations is in an affidavit, there is no proof to support his assertions. Defendants provided their proposed findings of fact based on sworn declarations from each defendant. Dominguez-Torres's conclusory allegations are not sufficient to defeat the defendants' motion for summary judgment.

## RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Dominguez-Torres's motion for summary judgment (ECF No. 34), be **DENIED**.

**IT IS FURTHER RECOMMENDED** that the defendants' motion for summary judgment (ECF No. 37) be **GRANTED in part and DENIED in part**. The

15

court recommends that summary judgment be denied to Czajkowska-Virgell regarding Dominguez-Torres's claim that she was deliberately indifferent to his medical issues on June 28, 2013, but granted on his claim that she failed to treat him on July 2, 2013. The court recommends that summary judgment be granted in full to defendants Dykstra and Dittman.

**IT IS FURTHER RECOMMENDED** that the court **DISMISS** defendants Beth Dittman and Joni Dykstra and proceed on the claim against defendant Kasia Czajkowska-Virgell regarding Dominguez-Torres's claim that he was denied treatment on June 28, 2013.

Your attention is directed to 28 U.S.C. § 636(b)(1)(B) and (C) and Fed. R. Civ. P. 72(b)(2) whereby written objections to any recommendation herein or part thereof may be filed within fourteen days of service of this recommendation. Failure to file a timely objection with the district court shall result in a waiver of your right to appeal.

Dated at Milwaukee, Wisconsin this 28th day of January, 2020.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge